IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**JAMES BARNWELL**

    **Plaintiff,**

    **v.**                                      **Case No. 3:02-cv-925**

**MARY WEST,**

    **Defendant.**

**MEMORANDUM AND ORDER**

**HERNDON, District Judge:**

**I. Introduction and Background**

Before the Court are the Motion for Summary Judgment filed by Defendant Mary West on December 1, 2006 (Doc. 39), and the Cross-Motion for Summary Judgment filed by Plaintiff Barnwell on April 13, 2007 (Doc. 56). For reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED**. Plaintiff's Cross-Motion for Summary Judgment is **DENIED**.

This litigation centers on an institutional lockdown at Menard Correctional Center that occurred between September 26 and November 26, 1997. Plaintiff asserts two claims, both regarding denial of access to courts, arising from this lockdown. First, Plaintiff contends that Defendant West, former paralegal at Menard, denied him access to the Menard law library during the lockdown, preventing him from filing a timely motion for leave to seek review of the denial of his state post-conviction petition. Second, Plaintiff contends that an affidavit, signed by Defendant Mary West misstated the dates of the lockdown. The Illinois Attorney

General's Office used this affidavit to oppose a writ of certiorari to the United States Supreme Court in Plaintiff's federal habeas corpus action. Plaintiff argues that this affidavit caused the Supreme Court to decline to hear his case. Thus, he argues Defendant West denied him access to courts. On August 7, 2002, Plaintiff filed this lawsuit pursuant to **42 U.S.C. § 1983**, seeking declaratory judgment in his favor, removal of Defendant West from her position at the Menard law library, a list of all Menard inmates who have filed grievances regarding denial of access to the courts during the last seven years, and compensatory and punitive damages. On January 13, 2005, the Court completed its threshold review of the action pursuant to **28 U.S.C. § 1915A,** and found that Plaintiff had stated a claim against Defendant West for denial of access to the courts, but dismissed all other named defendants for failure to state claims against them (Doc. 9).

Defendant West moved, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the complaint for failure to state a claim (Doc. 13). She argued that Plaintiff's claim was precluded by the holding in ***Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (claims for damages that imply the invalidity of an underlying state criminal conviction are not cognizable under section 1983 unless the plaintiff can demonstrate that the conviction has been reversed on appeal or otherwise declared invalid by a state court or a federal court by issuance of a writ of habeas corpus)**. The Court denied the motion to dismiss for failure to state a claim (Doc. 20), finding that Plaintiff had alleged an ongoing hindrance to his attempts to

2

seek post-conviction relief. Thus, Plaintiff's claims for injunctive relief were not barred by **Heck**, although compensatory and punitive damages were unavailable. The Court also dismissed with prejudice Plaintiff's request to have Defendant removed from her position in the Menard law library, and his request to have a list of all Menard inmates who had filed grievances regarding denial of access to the courts during the preceding seven years. Thus, Plaintiff was left with declaratory judgment against Defendant as his only available remedy.

In the instant motion (Doc. 39), Defendant West asserts that the following reasons entitle her to summary judgment: 1) Defendant did not deny Plaintiff access to courts in violation of the First Amendment because her affidavit accurately reflected the dates Plaintiff accessed the law library, the pertinent fact, even though the dates stated for the institutional lockdown were later found to be inaccurate; 2) Plaintiff is not entitled to injunctive relief in this matter because there is no ongoing constitutional violation; and 3) the Court does not have personal jurisdiction over the Defendant in an "official" capacity because she is no longer an official of the state of Illinois.

Plaintiff filed a Cross-Motion for Summary Judgment (Doc. 55), arguing that Defendant West violated Plaintiff's right of access to the Courts in the following ways: 1) by denying him access to the Menard law library or to legal assistance during the lockdown, he was unable to timely file his petition for leave to appeal in his Illinois post-conviction matter; 2) in filing an affidavit to the United States Supreme Court misstating the dates of the lockdown, his petition for certiorari was

denied; 3) the harm is ongoing so he is entitled to injunctive relief; 4) the Court has jurisdiction over West's successor; 5) Defendant West violated Illinois law in refusing to afford Plaintiff 35 days to complete his petition for leave to appeal to the Supreme Court of Illinois.

In response, Defendant reiterates that Plaintiff was not denied law library access prior to the lockdown, and that he attended the library on October 10, 1997, during the lockdown. Defendant argues that the connection to the denial of access during the lockdown and the late filing of the petition in March 1998 is too tenuous to survive summary judgment.

*Petition for Post-Conviction Relief*

Based on the evidence submitted by the parties, the Court finds the following facts to be undisputed. Plaintiff was convicted of aggravated criminal sexual assault and robbery in the Circuit Court of Cook County (Def. Exh. 1, p. 10). An Illinois Court of Appeals upheld the convictions (Def. Exh. 1, pp. 12-13; Pl. Affidavit, ¶ 6). The Supreme Court of Illinois denied leave to appeal without explanation (Def. Exh. 1, p. 17). Plaintiff filed an unsuccessful motion for post-conviction relief in Illinois Circuit Court (Def. Exh. 1, p. 18). He appealed the denial in the Illinois Court of Appeals, which denied relief on September 10, 1997 (Pl. Affidavit, ¶ 6). On September 19, 1997, Plaintiff filed a "Notice of Intent" to file a petition for leave to appeal that denial to the Supreme Court of Illinois (Pl. Affidavit, ¶ 7). Plaintiff received a letter from the Clerk of the Supreme Court of Illinois regarding his petition for leave to appeal, suggesting that Plaintiff "prepare to the best

of your ability a statement of the facts concerning your case, such as indictment number, crime committed, date and length of sentence and reasons why you feel you are entitled to review by the Supreme Court." (Pl. Exh. 1, p. 2).

On September 26, 1997, Menard Correctional Center was placed on lockdown, preventing Plaintiff and other inmates from physical access to the prison law library or the inmate law clerks who had been assisting Plaintiff in preparing filings in his post-conviction relief action (Pl. Affidavit, ¶¶ 8-9). Although library policy dictated that inmates with court deadlines be visited in their cells during lockdown periods, no library employee visited Plaintiff during the lockdown (Pl. Affidavit, ¶ 9). Although the institutional lockdown was still in place, on October 10, 1997, the warden allowed certain inmates with court deadlines to attend the law library. Plaintiff states that he did not receive a call pass to the library on that date as he should have because of his deadline, but that he had to request that cellhouse staff take him there. Nevertheless, Plaintiff attended the law library on that date, and received assistance from the inmate law clerks (Pl. Affidavit, ¶¶ 10, 13). Plaintiff states that even though he should have had five more days–until October 15, 1997–to file his petition for leave to appeal in the Supreme Court of Illinois, Defendant West refused to allow him any additional time in the law library to work on the petition (Pl. Affidavit, ¶ 11). Plaintiff further states that he requested additional library time so that he might file a late petition, but Defendant West refused (Pl. Affidavit, ¶ 12). Defendants offer evidence, however, that Plaintiff received a call-pass to the library

5

on November 21, 1997,[1] and attended the law library on December 11 and 30, 1997 (Def. Exh. 3). Plaintiff did not file his motion for leave to file a late petition for leave to appeal until March 31, 1998 (Pl. Affidavit, ¶ 15). The Supreme Court of Illinois denied the petition without explanation on June 3, 1998 (Pl. Affidavit, ¶ 16; Pl. Exh. E). Plaintiff did not file a motion for rehearing (Pl. Affidavit, ¶ 16).

*Federal Habeas Corpus Petition*

On November 20, 1998, Plaintiff filed a federal habeas corpus action. The United States District Court for the Northern District of Illinois denied the petition as untimely on February 24, 1999, because it was not filed within the one-year limitations period imposed by **28 U.S.C. § 2244(d)(1)** (Pl. Exh. 1, p. 17). The Court found that the one-year period of limitations began to run on October 15, 1997, the expiration date of his 35-day period to appeal the denial of post-conviction relief (***Id.***). Plaintiff filed his federal habeas petition on November 20, 1998, 36 days after the expiration of the limitations period. Plaintiff argued that the Menard lockdown (which the Court characterized as ending on October 26, 1997) impeded him from filing his state post-conviction proceeding. The Court found that even if the lockdown did present an impediment to filing the state petition, that impediment was removed on October 26, 1997, when the lockdown ended, and Plaintiff's petition was still 25 days late. (***Id.***)

Plaintiff's requests for a certificate of appealability were denied by both

---

[1]Plaintiff disputes that he was issued a call pass on November 21, 1997 (Pl. Affidavit, ¶ 14).

the district court and Seventh Circuit Court of Appeals (Pl. Affidavit, ¶ 19). Plaintiff successfully filed a motion for writ of certiorari in the United States Supreme Court, which the State of Illinois opposed, citing the affidavit of Defendant West.[2] Plaintiff disputes the following averments in the affidavit: that his deadline for filing the appeal of the post-conviction was October 15, not October 10 (Pl. Affidavit, ¶ 22); that lockdown did not end until November 26, 1997 (*Id.*); and that he was not called to the law library in November 1997 (*Id.*).

## II. Summary Judgment

Pursuant to **Federal Rule of Civil Procedure 56(c)**, summary judgment is proper only if it is demonstrated "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Haefling v. United Parcel Service, Inc.*, **169 F.3d 494, 497 (7th Cir. 1999)**; *Dempsey v. Atchison, Topeka and Santa Fe Railway Company*, **16 F.3d 832, 836 (7th Cir. 1994)**. The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be

---

[2] Defendant West made a number of averments in the affidavit. First, she indicated that library policy dictates that while Menard is on lockdown status and inmates are not allowed to physically attend the law library, library staff tour the cellhouses. Inmates on court deadlines are contacted and inmates making requests for copies, notary services, or other information will receive a visit. Defendant averred that Plaintiff was placed on "court deadline status" on September 18, 1997, for the purpose of filing his petition for leave to appeal. His deadline expiration date was October 10, 1997. Defendant averred that on September 26, 1997, Menard was placed on institutional lockdown, which lasted until October 9, 1997. Defendant averred that Plaintiff was not called to the law library until the end of the lockdown. Law library records show that Plaintiff "was called to the law library on October 10, 1997." Defendant averred that according to library records, Plaintiff was not on court deadline status again in 1997, but he submitted routine library requests and was called to the library in November and December 1997 (Def. Exh. 2).

resolved against the moving party. ***Adickes v. S.H. Kress & Co.***, 398 U.S. 144, 160 (1970); ***Miller v. Borden, Inc.***, 168 F.3d 308, 312 (7th Cir. 1999). A fact is material if it is outcome determinative under applicable law. ***Hardin v. S.C. Johnson & Son, Inc.***, 167 F.3d 340, 344 (7th Cir. 1999); ***Smith v. Severn***, 129 F.3d 419, 427 (7th Cir. 1997); ***Estate of Stevens v. City of Green Bay***, 105 F.3d 1169, 1173 (7th Cir. 1997). The "mere existence of a scintilla of evidence in support of the plaintiff's position" is not sufficient to demonstrate that a genuine issue of material fact exists. ***Weeks v. Samsung Heavy Industries Co., Ltd.***, 126 F.3d 926, 933 (7th Cir. 1997) (citing ***Anderson v. Liberty Lobby***, 477 U.S. 242, 252 (1986)).

Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. ***Plair v. E.J. Brach & Sons, Incorporated***, 105 F.3d 343, 346 (7th Cir. 1997); ***Lawshe v. Simpson***, 16 F.3d 1475, 1478 (7th Cir. 1994); ***Dempsey***, 16 F.3d at 836. Finally, summary judgment "will not be defeated simply because motive or intent are involved." ***Roger v. Yellow Freight Systems, Inc.***, 21 F.3d 146, 148 (7th Cir. 1994). See also, ***Miller***, 168 F.3d at 312; ***Plair***, 105 F.3d at 347; ***Hong v. Children's Memorial Hospital***, 993 F.2d 1257, 1261 (7th Cir. 1993); ***Lac Du Flambeau Indians v. Stop Treaty Abuse-Wisconsin, Inc.***, 991 F.2d 1249, 1258 (7th Cir. 1993).

In deciding a motion for summary judgment, the trial court must

determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

***Anderson*, 477 U.S. at 250.  *See also, Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986); *Haefling*, 169 F.3d at 497-98; *Sybron Transition Corp. v. Security Ins. Co. of Hartford*, 107 F.3d 1250, 1255 (7th Cir. 1997); *Weinberger v. State of Wisconsin*, 105 F.3d 1182, 1188 (7th Cir. 1997).**

### III.  Analysis

In ***Bounds v. Smith*, 430 U.S. 817 (1977)**, the Supreme Court held that as part of the state's affirmative duty to provide access to the courts they must "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  ***Bounds*, 430 U.S. at 828.**  "*Bounds* did not create an abstract, freestanding right to a law library or legal assistance," however.  ***Lewis v. Casey*, 518 U.S. 343, 351 (1996).**  An inmate must go further to demonstrate that his denial of access to the library or other legal assistance "hindered his efforts to pursue
9

a legal claim." ***Id.*** The right is not unlimited, however, as it requires only "meaningful access to the courts." ***Lehn v. Holmes*, 364 F.3d 862, 866 (7th Cir. 2004) (quoting *Bounds*, 430 U.S. at 823).** A prisoner is not entitled to the best available legal assistance possible, any specific legal assistance, nor is he entitled to legal help concerning every possible case that may be filed. ***Lehn*, 364 F.3d at 868-869.**

The Seventh Circuit employs a two-part inquiry in determining whether prison officials have infringed upon an inmate's right of access to courts. ***Smith v. Shawnee Library Sys.*, 60 F.3d 317 (7th Cir. 1995);** ***Jenkins v. Lane*, 977 F.2d 266, 268 (7th Cir. 1992).** First, the prisoner must demonstrate that a prison official "failed to assist in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." ***Jenkins*, 977 F.2d at 268 (quoting *Bounds*, 430 U.S. at 828).** Second, he must demonstrate that "his denial of access to legal materials caused a potentially meritorious claim to fail." ***Marshall v. Knight*, 445 F.3d 965, 969 (7th Cir. 2005).** ***See also Alston v. DeBruyn*, 13 F.3d 1036, 1041 (7th Cir. 1994) (an inmate must demonstrate "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation") (citation omitted).**

<u>Post-Conviction Petition</u>

The undisputed facts indicate that Plaintiff's appeal of his state post-

conviction matter was denied on September 10, 1997, and he filed his intent to file a petition for leave to appeal on September 19, 1997. Therefore, depending upon the time it took for Plaintiff to receive the denial of the appeal in the mail, Plaintiff had between sixteen and seven days prior to the institutional lockdown that he could have attempted to access the library to prepare his petition. Plaintiff presents no evidence that he was denied access during the pre-lockdown period. Furthermore, he attended the law library on October 10, 2007, at which time he worked on his petition with assistance from the inmate law clerks. The requirements imposed upon Plaintiff for filing his petition for leave to appeal were not strenuous; he merely had to provide basic facts concerning his criminal conviction and the reasons why he believed he was entitled to review by the Supreme Court of Illinois. Plaintiff presents evidence, by way of his affidavit, that no law library personnel came to his cell during the lockdown period to assist him with his petition for leave to appeal, and that Defendant West refused to add five additional days onto his deadline period. These facts are insufficient to establish genuine triable issues because they do not negate the evidence that Plaintiff indeed had access to the law library during the operative period. These facts are not, therefore, outcome determinative, **see Hardin, 167 F.3d at 344**, thus they are not material.

Plaintiff states that he requires the assistance of the inmate paralegals in the law library. As explained in **Lehn**, however, Plaintiff's right of access to the courts does not mean that Plaintiff is entitled to any particular legal resource or type

of assistance. **364 F.3d at 868-869**. He is not entitled to assistance from specific inmate paralegals.

Based on the foregoing, the Court finds that under the first prong of the test laid out in ***Smith,* 60 F.3d 317**, Plaintiff has not sufficiently demonstrated that he was denied access to the law library or to other legal assistance that prevented him from filing his petition for leave to appeal the denial of his post-conviction matter in state court.

<u>*Habeas Petition*</u>

Regarding the false affidavit and its effect on the denial of Plaintiff's petition for writ of certiorari in the United States Supreme Court, the undisputed facts indicate that Defendant West misstated that the Menard institutional lockdown ended on October 9, 1997. The affidavit correctly indicated, however, that the lockdown commenced on September 26, 1997, and correctly indicated that Plaintiff attended the law library on October 10, 1997.

Plaintiff's initial federal habeas petition was denied because it was untimely. Plaintiff argues that the federal district court should have considered his petition timely because the lockdown (which ended on November 26, 1997) was a barrier to timely filing his motion for leave to appeal his state post-conviction petition, the date of which starts the clock running on his one-year period for filing his habeas petition. If the barrier had been considered by the district court, his federal habeas petition, filed on November 20, 1998, would have been considered timely. Defendant West's affidavit, his logic goes, by indicating the lockdown ended

October 9, 1997, undermined his argument to the Supreme Court that his petition was filed in a timely manner and should have been considered upon its merits.

Plaintiff's argument that the affidavit caused his writ of certiorari to be denied presupposes that he was denied access to the courts during the Menard lockdown.  As explained above, however, the lockdown and his alleged denial of access to the law library did not deny him access to courts and did not prevent him from timely filing his petition for leave to appeal in his state post-conviction matter.  This Court's finding that Plaintiff was not denied access to courts during the lockdown also dooms his claim regarding the affidavit.

Furthermore, Plaintiff's argument is far too tenuous to survive summary judgment because Plaintiff provides no evidentiary support for his assertions.  The undisputed facts, as explained above, indicate that Plaintiff did have adequate access to the law library during his deadline period and during the lockdown.  Thus the date of termination of the lockdown for the entire institution is essentially irrelevant to Plaintiff's argument that he was denied access to the courts.  Furthermore, although misstated as to the termination of lockdown for the entire institution, the affidavit is not incorrect regarding Plaintiff's individual access, which is the only salient point here.  Thus, Plaintiff has not provided sufficient evidence to establish a genuine issue of material fact regarding Defendant West's affidavit and its effect on his petition for writ of certiorari.

Plaintiff has not shown that he was denied access to legal materials under the first prong of the inquiry, thus any detriment–filing a late petition for leave

to appeal in state court or failing to file his federal habeas petition on time–cannot be attributable to the denial of legal materials. Thus Plaintiff has not established that any genuine material facts exist to survive Defendant West's motion for summary judgment. Further, he has not demonstrated that he is entitled to judgment as a matter of law on the issue, and thus is not entitled to summary judgment in his favor on his cross-motion.

Because Defendant West is entitled to summary judgment in her favor on the access to courts issue, there is no need to address the tangential issue regarding her liability in an "official" capacity, or the issue of the appropriate remedy. Similarly, the Court declines to address the tangential jurisdictional issues raised in Plaintiff's cross-motion for summary judgment.

### IV.  Conclusion

Accordingly, the Court **GRANTS** Defendant West's Motion for Summary Judgment and **DENIES** Plaintiff's Cross-Motion for Summary Judgment. The Court **DIRECTS** the Clerk of the Court to enter judgment in favor of Mary West and against James Barnwell.

**IT IS SO ORDERED.**

**September 17, 2007**

/s/       DavidRHerndon
**UNITED STATS DISTRICT JUDGE**

15